MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
KEVIN J. BARRY (CABN 229748)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    laura.vartain@usdoj.gov
    kevin.barry@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  CR 11-0697 CRB |
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | |
| RODERICK HAROLD BOLDS | |
| Defendant. | |

## I.     INTRODUCTION

On December 12, 2014, a jury convicted defendant Roderick Bolds of Sex Trafficking of Children in violation of 18 U.S.C. § 1591(b)(2) and Transportation of a Minor with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a).  The victim on both counts was a 15 year-old girl, whom defendant met on the streets of Reno.  Testimony at trial proved that defendant quickly ascertained that the young girl, Sara G., was homeless, addicted to methamphetamine, and accompanied only by her dog and that he took advantage of these vulnerabilities to exploit her for his own gain.  At trial, Sara G., having recently turned 18, testified that defendant purchased drugs for her and kept her constantly high.  She also testified that she traveled with defendant from Reno, Nevada, to Oakland,

California because he promised he would help her find work as a housecleaner, and that within a day of arriving in Oakland, he began pimping her out. Sara G. testified that she walked the streets where prostitutes often solicit business – referred to as "the track" – at least once a day and often twice a day and gave all her money to defendant, who also required that she service him sexually on a daily basis. The jury convicted defendant of both charges. The jury did not unanimously find that defendant had used force, fraud, or coercion on the sex trafficking charge.

The government files this sentencing memorandum to discuss the offense conduct and applicable Sentencing Guidelines and to recommend that the Court impose a sentence of 360 months. As discussed further, a within-Guidelines sentence is 360 months to life.

## II.     DISCUSSION

### A.     The Offense Conduct

#### 1.     Defendant Enticed and Transported the Minor Victim From Nevada to California

The PSR accurately describes many of the facts of the case, but it does not discuss the evidence at trial, which the Court had the opportunity to hear and which is further described here. At trial, the jury heard testimony from, among others, law enforcement, an expert witness, and the victim. The unrebutted testimony at trial was the testimony of a 15-year old girl, Sara G., who described meeting defendant on the streets of Reno when she was homeless and addicted to methamphetamine. Defendant, more than 15 years older, asked Sara G. to accompany him back to his room. Sara G. and her dog went with defendant to his room at the Sands Hotel. Almost immediately, defendant learned that Sara G. lived on the streets with her dog and was addicted to methamphetamine. While there were many indicators that Sara was not 18, including her attire (a gym sweatshirt from a local high school) and her mannerisms, she told him she was 18. She testified that she often told people she was 18 so that they would continue to hang out with her.

Almost immediately, defendant took Sara G. to buy drugs, which he paid for and kept, dispensing to her when he wanted to do so. Sara G. spent the night with defendant at his hotel room, and was constantly high. At some point during the night, another woman, Thessalonica Jackson, "TT," joined them. TT and defendant began recruiting Sara G. to come with them to Oakland, promising her

"partying," friendship, and help finding work as a housecleaner. Sara G. told them she did not have any identification, and they said they would help her get some. Sara G. testified that she was not intending to go with them to Oakland, but the next morning, she accompanied them to the Greyhound station – still high – and defendant told her he had bought her a round trip ticket and persuaded her to get on the bus. He put her dog in her backpack, and they boarded the bus for California.

### 2.  Defendant Pimped Out Sara G.

The victim traveled by bus to California with defendant and TT. Upon arriving in Oakland, they went to defendant's home on High Street, in Oakland. It was late in the evening of July 3, 2011. Sara G. testified that she had no money and did not know anyone in the Bay Area. That night, defendant gave Sara G. more drugs. For the duration of their time together, defendant kept Sara high, but did not get high himself.

The day after their arrival in Oakland, on July 4, 2011, defendant hosted a Fourth of July barbeque. After it, he told Sara G. that she owed him money for the drugs and that she could make it back by prostituting. Sara G. testified that she was afraid of saying no to defendant, and that because she did not know what else to do, she agreed. Defendant and TT told Sara G. exactly what to do: how much to charge for different acts; how to approach potential customers while working "the track" in San Francisco; and even what to wear. For example, the first time she prostituted, Sara G. wore some of her own clothing, but most of the time, defendant provided her with clothing.

On the night of July 4, at the age of 15, Sara G. prostituted for the first time. That night, as she would do after every time she worked the track at defendant's insistence and sold herself to strange men for money, Sara G. gave defendant everything she earned. She testified that she held back just a few dollars. She also testified that one night in San Francisco, she was brutally raped. When she returned to defendant without being paid, he was upset with her for failing to get paid.

Throughout this time, Sara G. was captive in defendant's home. She testified that when she was alone in the home, she was locked in by doors that locked from both the inside and outside. She explained that she was never allowed to go outside alone. Someone else walked her dog or the dog went to the bathroom the house. Special Agent Adrienne Sparrow of the FBI corroborated this testimony by explaining that there was dog feces in the room where Sara stayed.

Defendant kept Sara G. vulnerable in other ways.  He knew her dog was her only companion, and he threatened it.  Each time he took her out to prostitute, defendant kept the dog behind, so that Sara G. would need to return to get him.  As Sara G. explained, she was also held captive by methamphetamine, which she explained made her "lazy."  Defendant gave Sara G. methamphetamine every time before he took her to prostitute, and again when she came home.  He also required that she service him sexually when she got home.

Defendant set up a website for Sara G. on which he advertised her characteristics and posted prices for various sex acts.  The jury had the opportunity to see the photos of Sara G. that defendant posted on the website, Redbook, advertising Sara G.'s services.  Sara G. testified that she was high when defendant took those photos and placed the advertisement.  She also testified that she "played dumb" whenever she received a call in response to the advertisements because she did not want to go on any "dates."

Sara G. testified about her fear of defendant.  She explained that when she did something he did not like – including saying "no" to him – he got a look on his face that made her afraid of what he might do if she crossed the line.  On one occasion, during sex, defendant put his hands on Sara G.'s neck, as if to choke her.  Sara G. testified that the first time she engaged in sexual acts with defendant, it was consensual but after that, she felt she had to do so.

After 11 days with defendant, Sara G. was arrested by San Francisco police officers while she walked the track.  Sara G. testified that defendant warned her that evening to stay away from men in a white car.  Sara G. testified that she wanted to get caught, and she went up to the white car and solicited the men in it, who were police officers.  One of the arresting officers testified that he immediately noticed that Sara G. was a minor, even on the poorly lit streets.  Sara G. insisted that the police help her get her dog back, which she testified was one reason she ultimately gave them her identifying information.

Detective Derek Stigerts, a detective with the Sacramento Police Department and tasked to the FBI testified regarding pimping and prostitute cultures, specifically the various ways pimps exert control and influence over women.  Generally speaking, Detective Stigerts described two types of pimps: "gorilla pimps" and "finesse pimps."  Gorilla pimps use force to gain control, while finesse pimps use

UNITED STATES' SENTENCING MEMORANDUM
CR 11-0697 CRB                          5

other, less clearly aggressive ways to exploit vulnerabilities to gain control.  Detective Stigerts did not testify to the facts of this case.  He explained that pimps often identify weaknesses like drug addiction, youth, and homelessness and exploit them in order to manipulate and control girls and women.  He further explained that many pimps use just enough show of force to keep their victims scared.

### 3. Jury Convicts Defendant on Both Counts

After the close of the government's case, the jury convicted defendant of both counts.  In doing so, the jury concluded that defendant intended to prostitute Sara G. when he met her in Reno and convinced her to travel to Oakland and that he knowingly or recklessly disregarded that the victim was a minor.

### B. The Sentencing Guidelines

The government objects to the Probation Office's calculations, which fail to include an applicable enhancement and an applicable upward adjustment.  These differences are discussed further below.[1]  As a result of the differences, the government's calculation is four points higher than the PSR calculates.

### 1. Base Offense Level

The government agrees with the Probation Officer's conclusion that the counts in this case group.  The base offense level for both counts is 30, pursuant to U.S.S.G. § 2G1.3.

### 2. Applicable Enhancements

The government also agrees with the PSR's two-point enhancement pursuant to U.S.S.G. § 2G1.3(b)(3) that the offense involved use of a computer or an interactive computer service, given that defendant placed an advertisement for Sara G.'s services on www.Redbook.com.  The PSR correctly identifies an additional two point enhancement pursuant to U.S.G. §2G1.3(b)(4)[2] because the offense

---

[1] The draft PSR recommended a total offense level of 38.  Defense counsel objected to the draft PSR's calculation, and the Probation Officer revised it to reflect defendant's position.  Upon reviewing the final PSR disclosed on June 18, 2014, the government contacted the Probation Officer and provided a letter detailing objections to the revised PSR, which include these objections to the Guidelines Calculation and an objection to including defendant's view of the facts of the case, which was not supported by any evidence at trial.

[2] The government requests that the PSR be revised to correctly identify the provision.  The PSR states that the enhancement for a sex act is found at U.S.S.G. § 2G1.3(b)(5), but the correct provision is U.S.S.G. § 2G1.3(b)(3).

UNITED STATES' SENTENCING MEMORANDUM
CR 11-0697 CRB                                6

involved a sex act. Sara G. had sex with defendant and engaged in sex acts as a prostitute under the control of defendant, who acted as her pimp. As a separate basis for applying this enhancement, the enhancement applies where there is a conviction under 18 U.S.C. §2423(a) and a commercial sex act, which also applies here.

However, the PSR fails to include an applicable enhancement pursuant to U.S.S.G. § 2G1.3(b)(2)(B). U.S.S.G. § 2G1.3(b)(2)(B) provides a 2-point enhancement where a participant unduly influenced a minor to engage in prohibited sexual conduct. This enhancement plainly applies. The Application Notes define "undue influence":

> The court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior…In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that subsection (b)(2)(B) applies. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.

Application Notes § 2G1.3 at 3(B). This enhancement applies both because defendant compromised the voluntariness of Sara G's behavior by exploiting her known vulnerabilities – including homelessness, youth, and drug addiction – and because defendant was more than ten years older than his victim. Applying this enhancement yields an adjusted offense level of 36.

The PSR also failed to include a victim-related adjustment. U.S.S.G. § 3A1.3 provides for a two level upward adjustment when the victim was physically restrained in the course of the offense. The Application Notes provide that the definition of "physically restrained" is defined in the Commentary to U.S.S.G. § 1B1.1, which states: "'Physically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up." Here, the unrebutted testimony at trial was that the victim was locked into defendant's home. Applying the adjustment and the enhancement for undue influence leads to a Total Offense Level of 38, rather than 34 as provided in the PSR.

### 3. The Government's Calculation

As discussed above, the government calculates the Guidelines differently from the Probation Officer. The government's calculation is:

| | |
|---|---|
| Base offense level (2G1.3): | 30 |
| Enhancements | |
| Undue influence (2G1.3(b)(2)(B)) | +2 |

|  |  |
|---|---|
| Use of a computer/interactive service (2G1.3(b)(3)(B)) | +2 |
| Sex act (2G1.3(b)(4)(A)) | +2 |
| Adjustments | |
| Victim adjustment/physical restraint (3A1.3) | +2 |

### C.     The Government's Sentencing Recommendation

The government has reviewed the "Offender Characteristics" section of the PSR in light of the requirements of Title 18, United States Code, Section 3553(a), which requires the Court to "impose a sentence sufficient, but not greater than necessary" after considering "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public and provide the defendant with training, medical care, or other correctional treatment; the Sentencing Guidelines; and the need to avoid unwarranted sentencing disparity between similarly situated defendants.  Having considered the factors of Section 3553(a), the government recommends that the Court sentence defendant to 360 months imprisonment, which is the low-end of the Guidelines for Offense Level 38 at a criminal history category of VI.  It is a significant sentence, which reflects both the seriousness of the offense and defendant's lengthy criminal history, which includes, among other offenses, a prior conviction for sex with a minor.  While the recommended sentence is significant, it is not greater than necessary taking into account all of the factors of 18 U.S.C. 3553(a).

The nature and circumstances of this offense are severe.  Sex trafficking of children is a crime that law enforcement works vigorously to address.  It is a crime with a high base offense level to reflect the seriousness of the offense.  In fact, with a base offense level of 30, even a defendant with no prior criminal history sentenced pursuant to the Guidelines will face a Guidelines range of 97-121 months, absent any enhancements or adjustments.  As described above, however, this case is not one in which defendant is a first time offender, and it is one in which various enhancements and an upward adjustment appropriately apply given the nature and circumstances of the offense.  The Court and the jury had the opportunity to hear from the victim, who described the ways in which defendant identified and exploited her vulnerabilities for his own gain.  At trial, the victim, more than two years after the offense conduct, exhibited the trauma her time with defendant caused her.  The Court saw her emotion when she testified about the night she was raped, and her anger that defendant cared only about money

UNITED STATES' SENTENCING MEMORANDUM
CR 11-0697 CRB                                                     8

and not any harm that came to her while she worked for him.  While the defense at trial was that S.G. was a knowing and voluntary participant, the jury appropriately rejected this defense to convict defendant on both counts.

There is also nothing in the defendant's background that would support a variance from the applicable guideline range.  Defendant's character and crime fall within the "heartland" of cases to which the Guidelines are intended to apply, and therefore, the sentencing range established for such offenses serves as an effective guide for determining a reasonable sentence.  *See Rita v. United States*, 551 U.S. 338, 351 (2007).  While the government acknowledges defendant's statements to the Probation Officer regarding the difficulty of his youth, the impact of that difficulty is undermined by defendant's repeated contact with law enforcement, including a prior that also involved sex with a minor.  In addition, with respect to defendant's difficult background, it is important to note that unlike other members of his family, who have become productive citizens who serve their communities, defendant's criminal history indicates a life that is a long string of criminal acts.  There is nothing in the PSR that suggests that defendant has held any gainful employment, despite being thirty-five years old.  Instead, he has supported himself by selling drugs and by the prostitution of others, including Sara G.  Accordingly, the government recommends a within-Guidelines sentence.

**III.    CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court impose a low-end Guidelines sentence of 360 months in prison, ten years of supervised release, and a $100 special assessment.

DATED: July 30, 2014                                    Respectfully submitted,

MELINDA HAAG
United States Attorney


/s/
LAURA VARTAIN HORN
KEVIN J. BARRY
Assistant United States Attorneys