# EXHIBIT A

Pages 1 - 53

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
   VS.                         )      NO. CR 11-0697 CRB
                               )
RODERICK HAROLD BOLDS,         )
                               )
            Defendant.         )
_____)

                      San Francisco, California
                      Wednesday, August 6, 2014

                **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                      MELINDA HAAG
                      United States Attorney
                      450 Golden Gate Avenue
                      San Francisco, California  94102
              BY:  **LAURA VARTAIN HORN**
                   **ASSISTANT UNITED STATES ATTORNEY**

For Defendant:
                      STEVEN G. KALAR
                      Federal Public Defender
                      450 Golden Gate Avenue
                      San Francisco, California  94102
              BY:  **JODI LINKER, Attorney at Law**
                   **DEPUTY PUBLIC DEFENDER**


Reported By:  Candace Yount, CSR# 2737, RMR, CCRR
              Contract Court Reporter
              United States District Court
              Northern District of California

| | |
|---|---|
| 1 | <u>**Wednesday - August 6, 2014**</u>                                    <u>**2:25 p.m.**</u> |
| 2 | <u>**P R O C E E D I N G S**</u> |
| 3 | ---000--- |
| 4 | **THE CLERK:** Calling case CR 11-0697, the United States |
| 5 | of America vs. Roderick Bolds. |
| 6 | Appearances, counsel. |
| 7 | **MS. VARTAIN:** Good afternoon, Your Honor. Laura |
| 8 | Vartain for the United States. |
| 9 | **MS. LINKER:** Good afternoon, Your Honor. Jodi Linker |
| 10 | appearing on behalf of Robert Bolds, who is coming into the |
| 11 | courtroom now in the custody of the Marshal Service. |
| 12 | **THE COURT:** We don't have any Probation Officer. |
| 13 | Mr. Mabie? |
| 14 | **THE CLERK:** Oh, I do not see him here. |
| 15 | **THE COURT:** Sorry? What happened? |
| 16 | (Pause in proceedings.) |
| 17 | **THE COURT:** Well, I can proceed without him. |
| 18 | (Pause in proceedings.) |
| 19 | **THE COURT:** I can proceed without him. At least I can |
| 20 | proceed until -- unless it becomes apparent that I need him for |
| 21 | something in the Probation Report, but I don't think I do. |
| 22 | I think -- I think there's a clear-cut difference of |
| 23 | opinion, and I think that's something that I don't need the |
| 24 | Probation Officer here for. But I think we can -- it's |
| 25 | something we have to discuss, because I have read, obviously, |

1   the presentence report, the government's submission, the

2   defense submission.

3        Oh, first, there is a motion to . . .

4                    (Pause in proceedings.)

5             **THE COURT:**  Proceed.

6             **MS. LINKER:**  Your Honor, there are two motions --

7             **THE COURT:**  Two motions.

8             **MS. LINKER:**  -- pending.  There's a motion pursuant to

9   Rule 29 and there's a motion pursuant to Rule 33.

10            **THE COURT:**  Right.  Those motions are denied.

11            **MS. LINKER:**  And if I could, just for the record,

12  state --

13            **THE COURT:**  Sure.

14            **MS. LINKER:**  -- that -- Is the Court taking into

15  consider -- into consideration everything I submitted in my

16  papers?

17            **THE COURT:**  Everything.

18            **MS. LINKER:**  So --

19            **THE COURT:**  Everything.

20            **MS. LINKER:**  -- the Court does not want me to repeat

21  those arguments here.

22            **THE COURT:**  Exactly.

23            **MS. LINKER:**  And the Court is denying --

24            **THE COURT:**  Both.

25            **MS. LINKER:**  -- both motions.

1      **THE COURT:**  Thank you.  Okay.  All right.

2      **THE CLERK:**  Mr. Mabie is on leave as --

3      **THE COURT:**  Okay.  All right.

4      **THE CLERK:**  -- according to his --

5      **THE COURT:**  That's okay.  Let's just move ahead.

6   Okay.  So, proceeding to sentencing.

7      The Probation Report, which is not -- it does seem to have

8   somewhat of an ambiguity in it -- concludes that the total

9   Offense Level is 36, the Criminal History Category is VI, but

10  if you look at the body of the presentence report, it's 34.

11      So, anyway, let's just leave it out.  I mean, that's one

12  of the -- The issue, it doesn't seem to be the criminal

13  history.  Of course, that's an issue.  But the -- the

14  difference of opinion seems to be, is whether the adjusted

15  offense level is -- is 34 -- pardon me -- yeah, 34 or 36, or

16  38.

17      Right?

18      **MS. VARTAIN:**  That's correct.

19      **THE COURT:**  So, I mean, that's -- that's the dispute.

20  Is that right?  Have I got that right?

21      With the difference of opinion being that the defense

22  believes that the Offense Level is 34 and the government

23  believes it's 38.

24                    (Pause in proceedings.)

25      **MS. VARTAIN:**  That's correct.

1      **THE COURT:**  You can speak up.  I mean, I'm just trying

2    to . . . lay out what I think the is the -- the areas of

3    disagreement.

4      **MS. LINKER:**  Your Honor, I think that's correct.  I

5    think that it's a typo in the sentencing recommendation because

6    I do believe that the Probation Officer concluded that the

7    total Offense Level is 34 and --

8      **THE COURT:**  He did, yeah.

9      **MS. LINKER:**  -- in the guideline provisions, where

10   they list what -- what the months are, it's reflective of 34.

11     **THE COURT:**  Yeah.

12     **MS. LINKER:**  So I think that's just a typo there.

13      And Your Honor's correct that if the Court is to consider

14   the guidelines, it is a 34.

15     **THE COURT:**  Well, but what does that mean?

16     **MS. LINKER:**  Well, I have made an argument that the

17   Court should exercise its discretion under *Kimbrough* to have a

18   policy objection to the guidelines because the guidelines are

19   based on the mandatory minimum.

20     **THE COURT:**  That's fine.  However, the Court, I

21   think -- I understand what you're saying and I don't disagree

22   with what you're saying -- okay? -- under *Kimbrough*.  But the

23   Court has to find the appropriate guideline, that is, a

24   guideline -- the guideline applicable to the offense and to the

25   criminal history.

1    Whether the Court has to follow that, depart from it, vary

2    from it are all arguments that I expect I'll hear today.  But I

3    think I have to -- I think, if I come out with the wrong number

4    at the beginning, it's arguable that -- that's -- that's --

5    that's erroneous and it's arguable whether it's fatally

6    erroneous, that is, would result in a -- in a -- in a reversal

7    on that basis alone.

8    We're now joined by the Probation Office.

9    **PROBATION OFFICER:**  Yes.  Thank you, Your Honor.

10   Patrick McFate on behalf of Probation.

11   **THE COURT:**  Thank you.

12   Oh, so I think the only question really, which I think

13   Miss Linker is right, is that -- And I don't know what your

14   familiarity is with the Probation Report.  Nevertheless, the --

15   the level that the Probation Officer found is 34, not 36, even

16   though at the end they say 36, but when you add up the points,

17   it's 34.

18   And I think that's Mr. Mabie's view and I think that was

19   what was --

20   **PROBATION OFFICER:**  We have to assume so, Your Honor.

21   I --

22   **THE COURT:**  Yeah, I understand.

23   **PROBATION OFFICER:**  I'm sorry.

24   **THE COURT:**  No.  That's okay.

25   All right.  So let's -- let's try to break it down into

1    its pieces, because there is no disagreement as to certain

2    computations.

3         The Base Offense Level is 30.  No disagreement as to that.

4         **MS. VARTAIN:**  No disagreement.

5         **THE COURT:**  And if there is, just speak up.  I mean,

6    you're not -- I guess I don't have to encourage you to speak

7    up; right?

8         **MS. VARTAIN:**  That's right, Your Honor.

9         **THE COURT:**  There you go.

10        Okay.  I'll have to encourage Miss Linker to speak up

11   because she failed to speak up right then and there.

12        Okay.  The use of a computer is an added two points.  I

13   don't think there's a dispute as to that.

14        The applicability of 2G1.3(b) -- or small -- (b)(4),

15   sexual acts with an individual, is another two points.  I don't

16   think there's an agree -- disagreement as to that.

17        So those are the areas of agreement.

18        Then we get into two areas of disagreement.

19        The first area of disagreement -- Let me take the easy one

20   first.  The question of the applicability of 3A1.3.

21        I'd better get out my . . .

22                        (Pause in proceedings.)

23        **THE COURT:**  3A1.3 (reading):

24         "If a victim was physically restrained in the

25        course of the offense, increase by 2 levels."

1     The government urges that specific offense characteristic;

2  is that right?

3          **MS. VARTAIN:**  That's correct, Your Honor.

4          **THE COURT:**  Right.  And . . . the . . .

5     Let -- Let me ask this question:

6     If it is true that there was physical restraint in the

7  course of the offense, the jury could have found that within

8  the -- within the charge; is that correct?  Or have I missed

9  that?

10         **MS. LINKER:**  I'm not sure I understand the Court's

11 question.

12         **THE COURT:**  Sure.

13    The defendant was acquitted -- I mean, he wasn't acquitted

14 exactly.  It was hung, I guess.  Did I order an acquittal?

15         **MS. LINKER:**  According to the government, the

16 government's response to our Rule 29 motion, they cited a Ninth

17 Circuit case that states where the jury is silent as to one of

18 the questions, it is an implied acquittal and, therefore, he is

19 deemed to have been acquitted of that --

20         **THE COURT:**  Okay.

21         **MS. LINKER:**  -- that portion of the count.

22         **THE COURT:**  That's right.

23    Had the jury convicted him of that portion of the count,

24 that would be covered, would it not, by the restraint, or is

25 that two different things?

1        **MS. VARTAIN:**  Well, Your Honor --

2        **THE COURT:**  One was --

3        **MS. VARTAIN:**  -- I don't think it necessarily --

4        **THE COURT:**  -- fraud, coercion --

5        **MS. VARTAIN:**  It was force, fraud or coercion, but it

6    didn't specifically ask -- The jury did not specifically have

7    to find that the victim was in -- was locked up, which is what

8    this -- I don't know -- what the restraint language implies.

9        **THE COURT:**  So this is a . . .  This is a -- a . . .

10   I don't know whether -- Well, what's the right word -- a more

11   specific narrow finding than the -- than the -- than what --

12   than what the charge was?

13       **MS. VARTAIN:**  I -- I --

14       **THE COURT:**  I mean -- Or to get to the bottom line, I

15   don't find it.  I'm -- I'm trying to figure out whether, if I

16   did find it, would that be inconsistent with the jury verdict.

17   I think it wouldn't be.

18       **MS. VARTAIN:**  (Shaking head.)

19       **MS. LINKER:**  (Shaking head.)

20       **THE COURT:**  But, to me -- and I've read what you've

21   written on the subject -- there is insufficient evidence in the

22   Court's view to warrant a finding that this specific offense

23   characteristic applies.

24       Okay.  So I think that's the easy one, easy in the sense

25   that it's just how did the evidence strike the Court.

PROCEEDINGS

1   　　　I went through all the evidence.  I heard the whole case,

2   and I don't believe that was established to the level of

3   certainty -- which I understand may just be a preponderance of

4   the evidence -- and I'm not satisfied by a preponderance of the

5   evidence that that was shown.

6   　　　**MS. LINKER:**  We agree with the Court.

7   　　　**THE COURT:**  All right.  Therefore, we get to the one

8   specific offense characteristic that I don't know that I

9   understand the defense argument with respect to that.  And

10  it's -- it's the 2G1.3(b)(2).

11  　　　It's basically the undue influence.

12  　　　And let me just read what it is . . . and then we can

13  discuss it.

14  　　　　　　　　　(Pause in proceedings.)

15  　　　**THE COURT:**  It's -- Maybe I misstated what it -- It's

16  3 -- is it G?  Yeah.

17  　　　　　　　　　(Pause in proceedings.)

18  　　　**THE COURT:**  2G.

19  　　　　　　　　　(Pause in proceedings.)

20  　　　**THE COURT:**  Okay.  It's 2G1.3(b)(2)(B).  That's it.

21  So it reads:

22  　　　　　"If the offense involved the knowing

23  　　　participation of a participant's" --

24  　　　We're not talking about that.

25  　　　(Reading):

1        "If the offense involved a participant otherwise

2     unduly influenced" --

3     Let me start.

4     (Reading):

5        "If the offense . . ."

6     I'm trying to read it in the English language (reading):

7        ". . . involved a participant otherwise unduly

8     influenced a minor to engage in a prohibited sexual --

9     prohibited sexual conduct, increase by 2 levels.

10    Did I state that right?  Not quite.

11        **MS. VARTAIN:**  I think just starting with "If a

12    participant otherwise unduly" --

13        **THE COURT:**  There you go.  "If."  Thank you.  That is

14    actually the way it's written (reading):

15        "If a participant otherwise unduly influenced a

16    minor to engage in prohibited sexual conduct" -- so --

17    "increase by 2 levels."

18    To which you then look at the application notes.  And the

19    application note, when they talk about undue influence, they

20    say:

21        "In determining whether subsection (b)(2)(B)

22    applies, the court should closely consider the facts

23    of the case to determine whether a participant's

24    influence over the minor compromised the voluntariness

25    of the minor's behavior.  The voluntariness of the

1    minor's behavior may be compromised without prohibited

2    sexual conduct occurring.

3         "In a case in which a participant is at least 10

4    years older than the minor, there shall be a rebutable

5    presumption that subsection (b)(2)(B) applies.   In

6    such a case, some degree of indue -- undue influence

7    can be presumed because of the substantial difference

8    in age between the participant and the minor."

9         Now, as to that, it's not.  It's agreed that the -- that

10   the defendant, Mr. Bolds, is more than 10 years older than the

11   victim.  So we have a situation in which it's a rebutable

12   presumption.  That's sort of -- We're all there.  We're all

13   starting out on that point.

14        **MS. LINKER:**  (Nodding head.)

15        **THE COURT:**  And now I turn to you, Miss Linker,

16   because, based upon the evidence as I recall, I would make

17   that -- I would -- I would apply that specific offense

18   characteristic.

19        **MS. LINKER:**  Thank you, Your Honor.

20        I think what's important is to look at the entire context

21   of the section that the Court was just reading in 2G1.3(b)(2),

22   because it -- the Court read just (b) and declined to read part

23   (a), but (a) informs (b) because what (b) says is "otherwise."

24        So (a) is listing out ways that it could happen and (b) is

25   saying "otherwise," so it's getting at similar types of

1   conduct.

2       And I acknowledge there is the rebutable presumption, but

3   it is a rebutable presumption.  And what there must be are

4   facts showing that this influence compromised the voluntariness

5   of the minor's behavior.

6       And what the evidence at trial showed was that the minor

7   participated in this by choice.

8       And I want to just give the -- the Court --

9           THE COURT:  I'm trying to figure -- Can I just

10  stick --

11          MS. LINKER:  Yes.

12          THE COURT:  -- to your first argument --

13          MS. LINKER:  Of course.

14          THE COURT:  -- because I'm not -- I don't know that I

15  understand what you just said.

16          MS. LINKER:  Okay.

17          THE COURT:  Okay.  You say, well, (b) has to be -- has

18  to be -- is informed by (a).

19          MS. LINKER:  Correct.

20          THE COURT:  So I'm looking at (a).

21          MS. LINKER:  Yeah.

22          THE COURT:  And (a) is this.  It says (reading):

23          "If the offense involved the knowing

24      misrepresentation of a participant's identity to

25      persuade, induce, entice, coerce, or facilitate the

PROCEEDINGS

1    travel of the minor to engage in prohibited sexual

2    conduct . . . "

3        Okay.  Well, that just -- That had nothing -- That has

4    nothing to do with this case.

5            **MS. VARTAIN:**  Right.

6            **MS. LINKER:**  Then --

7            **MS. VARTAIN:**  And --

8            **MS. LINKER:**  Then --

9            **MS. VARTAIN:**  -- then it's followed by an "or."

10            **THE COURT:**  Then it says "or."

11            **MS. LINKER:**  And then "or."  What does the word

12    "otherwise" mean if it's -- is not related to (a)?  "Otherwise"

13    is irrelevant if it's not related to (a).

14            **THE COURT:**  Well, what does -- What --

15            **MS. LINKER:**  It's some --

16            **THE COURT:**  I don't -- I don't even see --

17            **MS. LINKER:**  Because --

18            **THE COURT:**  -- how they would go together.

19            **MS. LINKER:**  Well, then, Your Honor's on the

20    Sentencing Commission.  Your Honor could --

21            **THE COURT:**  Well --

22            **MS. LINKER:**  -- lead to a change --

23            **THE COURT:**  -- I didn't write this.

24            **MS. LINKER:**  I understand, but the way it's written,

25    the word "otherwise" has meaning and the Court has to give

PROCEEDINGS

1   meaning to every word in there.

2        And unless the Court gives -- context gives meaning to the

3   word "otherwise," it's --

4           **THE COURT:**  Well, why doesn't "otherwise" simply mean

5   a different thing?

6           **MS. LINKER:**  Why would --

7           **THE COURT:**  I mean, "otherwise" --

8           **MS. LINKER:**  -- it be in the same section?

9           **THE COURT:**  Pardon?

10          **MS. LINKER:**  Why would it be in the same section as

11  that?  I don't understand why --

12          **THE COURT:**  Why -- Oh, why?

13          **MS. LINKER:**  Well --

14          **THE COURT:**  Because what they're talking about here --

15  Oh, I don't know.  I mean, I -- I just -- Now I have to look at

16  it.

17          **MS. LINKER:**  So -- So I think that what it's saying is

18  a misrepresentation --

19          **THE COURT:**  Well, we know what the -- It -- Let's just

20  say it would -- Let's start -- Let's start with (b) alone.

21  Forget (a).  Forget (a) just for the moment.  Let's say (b)

22  exists and it existed in a separate paragraph.

23        Maybe -- Maybe I'll buy your argument that (a), the

24  existence of (a), the presence of (a) nullifies (b).

25        But for the sake of this limited discussion, let's assume

PROCEEDINGS

1  that (b) stood alone and -- because you have sort of two bites

2  at the apple.

3      So if you can convince me that (b) standing alone doesn't

4  apply under the facts of this case, I don't have to get to that

5  argument --

6          **MS. LINKER:**  Very well.

7          **THE COURT:**  -- of what "otherwise" meant.

8          **MS. LINKER:**  Very well.  And I'll start with that,

9  then, Your Honor, which is that there's a rebutable

10 presumption.

11     So it's not enough that -- of the age difference.  There's

12 a presumption, and I think that we rebut it because I don't

13 think the evidence showed that anything that Mr. Bolds did

14 compromised the voluntariness of the minor's behavior.

15     And I want to point the Court to the audio interview of

16 Miss Garibay, which came into evidence at the trial, when she

17 was asked about how she got into prostituting.

18     And her response was (reading):

19          "Uh, I told them that I already -- Because he

20      asked me in Reno if I had ever prostituted and I'm,

21      like, 'No, I'm not like that.'  And then I re -- I

22      told him again that.  'I told you I didn't do it.'

23      And I don't know -- Like, I'm -- I'm scared.  He's,

24      like -- He was telling me, 'It's okay.  It's okay.

25      It's pretty easy.  You get all, like -- Like, I'll

1    load your pipe.  You get all the dope you want.  You

2    can have your hair done.  You can get new clothes,

3    shoes, buy all this makeup and everything.'  And like

4    he told me, he's all, like, 'Just think about it.'

5    And we, like -- We sat there for, like, a couple

6    minutes and he was just staring at me.  And I said

7    okay."

8        And I repeated that to Miss Garibay on the stand.  And she

9    confirmed that he told her what she could get with the money.

10   She thought about it.  He looked at her.  And she said okay,

11   and she decided to do it.

12       There was nothing that he did that compromised the

13   voluntariness of her actions.  And this is directly from her

14   transcript.

15       **THE COURT:**  Well, I know it's directly from the

16   transcript, but I don't know that I buy that there was nothing

17   that he did.  I believe there were all sorts of things that he

18   did.

19       **MS. VARTAIN:**  Your --

20       **THE COURT:**  I think -- I think he -- he . . .

21       This place where she was kept -- arguably, she could walk

22   out, but there were a number of slightly intimidating factors

23   that were present at the time.

24       Well, I should let the government make its case.

25       **MS. VARTAIN:**  I think those factors, as well as the

PROCEEDINGS

1    use of the drugs, Your Honor.

2         And, in fact, to -- to find that there was no undue

3    influence here would essentially be to throw out what the jury

4    found in this case, which was that Mr. Bolds transported her

5    with the intent that she engage in prostitution.  In other

6    words, that it wasn't a willing -- that -- that the victim was

7    a victim, that she was not a willing participant in this.  She

8    didn't willingly prostitute.

9         And so I -- I think Miss Linker's argument here

10   essentially asks the Court to find that the jury -- to throw

11   out the jury's finding on these facts.

12        **MS. LINKER:**  Your Honor, again --

13        **THE COURT:**  I don't know to what extent the role of --

14   of providing methamphetamine to a meth addict who's 15 years

15   old qualifies as influencing inappropriately or undue -- unduly

16   influencing a minor.

17        I mean, I thought -- That's the way I sort of looked at

18   it.  It was not a single act but it was a -- a -- a combination

19   of act, furnishing of the drug, the circumstances of her being

20   housed in -- in Reno -- or, no, in --

21        **MS. VARTAIN:**  In Oakland --

22        **THE COURT:**  -- in Oakland.  The -- The false promise

23   of a certain type of employment, as a house cleaner.  That

24   was -- That was provided.

25        Some of the sexual activity, I don't know that --

1          **MS. VARTAIN:**  Yes.  And all of those factors, Your

2   Honor.

3          But, also, we don't even need to reach those points

4   because the rebutable pre -- presumption is that he was more

5   than 10 years older.  He was far more than 10 years older.  He

6   was, I think, nearly 20 years older than the victim.

7          And so I'm certainly happy to discuss all of the evidence

8   on the use of drugs, which I think is -- does satisfy undue

9   influence, as well as the other factors, but we have it here

10  clearly met on the plain language of his age.

11         **THE COURT:**  Well, see, here's the problem with the

12  undue influence, is that the parties here -- and the statute

13  recognized it -- are so unequal in terms of bargaining power.

14  Not only just bargaining power, but that you're dealing with a

15  minor who is being told by somebody 20 -- 10 or 20 years older

16  to do X, Y and Z, and she testified as to X, Y and Z, then it

17  seems to me that that is the essence of influence over the

18  person.

19         **MS. LINKER:**  Your Honor, if I may respond to all of

20  those points.

21         I agree with the Court on the use of -- I don't know that

22  the Court concluded as much, but what the Court was suggesting

23  about why giving drugs to a person who is already admitted to

24  be a meth addict, whether that's undue influence.  I think it's

25  not.

1      Second, with the --

2         **THE COURT:**  It doesn't -- It's not undue in -- What

3    I'm trying to say is, you take the factors and you say, "No,

4    no, that's not undue influence.  He's not just giving the drugs

5    and, therefore, telling her to -- influencing her to take it,"

6    though I think at some level, obviously, you are.  But when

7    you're a meth addict, you don't need much to influence you to

8    go take the drug.

9         But the effect of providing methamphetamine to a

10   15-year-old who is an addict makes the threshold for

11   influencing that person much lower.  It's just easier to do it.

12   It's easier to exert your will on somebody who is simply

13   craving a fix.

14       Now, the question really is -- the question really is:  Is

15   that -- Is that the overwhelming characteristic of meth?  That

16   it doesn't make any difference, 15, 25, 50, she'd do the same

17   damn thing.  So is that what we're saying?

18       And to which I say:  It could be.  But it is worthy of

19   further punishment if the person's age is such that the age

20   itself and the difference in the age itself presents whether

21   it -- whether the defendant should have been more reflective

22   and say, "You know, this is a kid.  This is what I'm doing to a

23   child," you know.  That's what the law is designed to protect.

24       And so it seems to me that it fits right within (b).  If

25   (b) were standing alone, it would fit right within it because

 1   he overcame, admittedly, a very weakened resistance, if any.

 2   If any.

 3          **MS. LINKER:**  Well, Your Honor, I actually disagree.

 4   And I --

 5          **THE COURT:**  Okay.

 6          **MS. LINKER:**  -- don't think the evidence support that

 7   she was weakened, if any.  I think that she made choices on her

 8   own.  And that the government's point about whether she was a

 9   willing -- or was not a willing participant in the prostitution

10   actually doesn't matter under the statute.

11       And I think what Your Honor is getting at goes to his

12   liability for the offense in and of itself.

13       And so is it already encapsulated in the Base Offense

14   Level of 30?

15       And so whether there's an additional problem that's

16   created, that there's an additional --

17          **THE COURT:**  So let me ask you --

18          **MS. LINKER:**  -- undue influence --

19          **THE COURT:**  Okay.  The statute itself says a person

20   shouldn't transport a minor to engage -- Well, whatever it

21   says.

22          **MS. LINKER:**  Your Honor --

23          **THE COURT:**  It was --

24          **MS. LINKER:**  Your Honor, but just to be clear.

25       If he were only convicted of that 2423 count, he would

PROCEEDINGS

1   have a different base offense level on the transportation

2   count.  So it's the 1591 count that triggers the Base Offense

3   Level of 30.

4           **THE COURT:**  Okay.

5           **MS. LINKER:**  So, they are different.

6           **THE COURT:**  And the 1591 count is the --

7           **MS. LINKER:**  Is Count One and . . .

8       It has to do with whether he recruited, enticed, coerced,

9   induced her to prostitute knowing or in regardless disregard of

10  the fact that she was underage.

11          **THE COURT:**  Right.

12          **MS. LINKER:**  And then Your Honor did what I believe

13  was a constructive amendment, allowed that by having the

14  reasonable opportunity to observe, because I think the

15  evidence --

16          **THE COURT:**  That goes back to your -- Yes.

17          **MS. LINKER:**  Which influences this issue, which is

18  that I don't think that the jury necessarily found that

19  Mr. Bolds knew or recklessly disregarded her age.

20      And so it goes into this undue influence because I think

21  all of the evidence at trial was that she told him she was 18.

22  She told everybody she was 18.

23      She told the police (reading):

24          "He thought I was 18 turning 19 in October.  Uh,

25      18 turning 19 this October."

1    That's all the evidence was.  And so the jury must have

2   relied on that reasonable opportunity to observe to convict him

3   of that count --

4          **THE COURT:**  Okay.

5          **MS. LINKER:**  -- which I think was vague and I think

6   was a constructive amendment, as we've argued, and that's what

7   then triggers the higher offense base offense level.

8          So it all comes together.  And I don't think the age

9   difference is enough.

10         And the guidelines say as much.  It's a presumption, but

11  it is a rebutable presumption, and more needs to be shown.

12         **THE COURT:**  Well, it's a rebutable presumption but --

13  but the -- what would rebut the presumption would be -- For

14  example, part of what would rebut the presumption is, let's say

15  she wasn't addicted to any drugs.

16         And -- And she says, "I'm going -- Yeah, I'd like to be a

17  prostitute" or "I'm going" or "I'm -- I'm going to do this."

18         Not influenced -- She's 20 years younger than the

19  defendant, and younger than 18, but she says, "It's -- It's a

20  life that's fine with me.  I'll do it."

21         **MS. LINKER:**  Your Honor, she said --

22         **THE COURT:**  What if -- What if -- No.  I'm just saying

23  what if -- Let's take the drugs out for the moment.  What about

24  that case?

25         Can -- Would -- Would you say in that case there was no --

1   no undue influence?

2           **MS. LINKER:**  There would not be undue influence in

3   that case.

4           **THE COURT:**  Okay.  There would be a presumption of

5   undue influence.

6           **MS. LINKER:**  Correct, and there wouldn't be --

7           **THE COURT:**  Okay.  But you have a presumption, and you

8   would say it would be rebutted by the fact that she willingly

9   went.

10          **MS. LINKER:**  (Nodding head.)

11          **THE COURT:**  In this case, the fact that she was

12  addicted to -- to the methamphetamine, in the Court's view,

13  destroyed her -- or impaired her ability to resist the

14  influence that the defendant's age would have -- would have

15  entered into the -- the equation on her conduct.  So that's why

16  I think it's appropriate.

17          **MS. LINKER:**  But, Your Honor, I think that the point

18  is, Mr. Bolds didn't make her a meth addict.  She was going to

19  get meth regardless --

20          **THE COURT:**  Oh, that doesn't make any difference.

21          **MS. LINKER:**  Oh, it does --

22          **THE COURT:**  The fact is --

23          **MS. LINKER:**  -- under the guidelines.

24          **THE COURT:**  If -- No.  If he made her a meth addict,

25  if he addicted her to methamphetamine, I guarantee you I would

 1   have no hesitation whatsoever going along with the government's

 2   recommendation --

 3          MS. LINKER:  Exactly.

 4          THE COURT:  -- of 360 months.  That didn't happen

 5   here.

 6      But the fact whether -- He's not being charged with having

 7   made her a meth addict.  He's being -- This is an issue that we

 8   are considering, whether it's relevant his knowing that she's a

 9   meth addict, and her being a meth addict gave him the

10   opportunity to exercise influence over her, which can be

11   considered to be undue in -- in -- as -- under the facts.

12   That's the way I looked at it.

13          MS. LINKER:  I'll say one more thing and then I will

14   submit on this because --

15          THE COURT:  Well, I think what you were saying -- let

16   me just see whether you're right -- whether I'm right about

17   whether -- what you're saying is, is that . . .

18      What -- Your objection is far more serious than just the

19   objection of the added two points.  Your objection is:  Look,

20   it was an improper instruction to the jury.  It was a

21   constructive amendment and so forth, and I read it this way and

22   argued -- and it was argued a particular way and so forth.

23   That's what -- That's the error.

24      I disagree.  I over -- I overruled your objection and I

25   denied your motion.

1    But isn't that really what you're saying with respect to

2  this --

3          MS. LINKER:  It's part of it.

4          THE COURT:  -- specific offense characteristic.

5          MS. LINKER:  It's part of it because the age

6  difference is one of the triggering factors in there, and I

7  think that constructive amendment goes to the age difference

8  and his knowledge of whether he was seeking out someone young

9  that he could try to influence.

10    But I also think that what's important to consider is:

11  What actually influenced her to engage in commercial sexual

12  activity?

13    What engaged her -- What encouraged her and what

14  influenced her to do that was, he brought up that she could buy

15  makeup, show -- shoes, new clothes, get her hair done, and she

16  could get dope.  And he looked at her.  He stared at her for a

17  couple minutes and she decided, "Yeah, I'll do it."

18    That's not the kind of undue influence that I think that

19  the guidelines is addressing -- are addressing.

20          THE COURT:  Oh --

21          MS. LINKER:  So --

22          THE COURT:  Submitted?

23          MS. LINKER:  -- that's my argument.

24    Submitted.

25          THE COURT:  All right.  I'm going to find that

1    two-point enhancement and I'm going to find:  That the -- that

2    the Adjusted Offense Level is 36; the Criminal History Category

3    is VI; the guideline range is 324 months to 405 months.

4           **MS. LINKER:**  Your Honor, with respect to the criminal

5    history, there's one objection that we have --

6           **THE COURT:**  Sure.

7           **MS. LINKER:**  -- with respect to the report that I

8    think -- I don't want to forget to include.  And I ran this by

9    government counsel and they -- I think they may not object to

10   this one change.

11          In Paragraph 32 of the report, it lists his prior

12   convictions.  And it states on January 16th, 2007, two

13   convictions, one for felon in possession of a firearm and the

14   other for possession of cocaine base.

15          The -- I've shown the government the documents that

16   indicate that, while he was charged with felon in possession of

17   a firearm, that charge was dismissed and he was only convicted

18   of the possession of cocaine base offense.  And so that -- I'd

19   ask that the words "felon in possession of a firearm" be

20   stricken from --

21          **THE COURT:**  Yes, I'll --

22          **MS. LINKER:**  -- that paragraph.

23          **THE COURT:**  I'll strike it.

24          The Paragraph 32, the first reference should go out.

25          Okay.  So we have now the following:

1        The government has recommended 300 what?

2        **MS. VARTAIN:**  360 with the understanding the

3   calculation at that point was a -- was Level 38, Criminal

4   History Category VI.

5        **THE COURT:**  Well, I'm now finding the Adjusted Offense

6   Level is 36.

7        **MS. VARTAIN:**  Yes.

8        **THE COURT:**  So . . .

9        **MS. VARTAIN:**  The government's position is that a

10  guideline sentence is appropriate in this case.

11       **THE COURT:**  Okay.  So somewhere between 324 and 405.

12       **MS. VARTAIN:**  That's correct, Your Honor.

13       **THE COURT:**  Okay.  The Probation Department believes

14  that the appropriate sentence is 240 months; is that right?

15       **MS. VARTAIN:**  Well, Your Honor --

16       **PROBATION OFFICER:**  I can't comment.

17       **THE COURT:**  Well, whatever it said.  What did it say?

18       **MS. LINKER:**  240 months, Your Honor.

19       **THE COURT:**  240.

20       The . . .  The . . .

21       **MS. VARTAIN:**  Your Honor, that was based on a

22  calculation -- a guideline --

23       **THE COURT:**  Well --

24       **MS. VARTAIN:**  -- calculation --

25       **THE COURT:**  -- it says 36 right --

1          **MS. VARTAIN:**  Yes, but that --

2          **THE COURT:**  -- on the same page.

3          **MS. VARTAIN:**  -- actually is for the two -- That

4    actually is the guidelines if the calculation were, I believe,

5    lower than a 36.  If it were --

6          **THE COURT:**  If the calculation is lower than the 36,

7    but the Probation Department came to the conclusion of 36.

8          Okay.  Well, whatever it is, it is.  It's around there.  I

9    mean, I'm not -- I mean, the Probation Officer, who is not

10   here -- You know, maybe -- maybe it's lower, maybe it's higher.

11   I don't know.  I mean, I don't know, anyway.  It's about 240

12   months.

13        And the defense has a number of arguments.

14        First of all, their -- their recommendation is that in no

15   event should a sentence greater than 120 months be imposed, and

16   they have a variety of -- or several arguments.  The first

17   argument -- One of the arguments is going back to the plea

18   agreement that was entered into.

19        And that presents an interesting procedural question;

20   maybe it's a substantive question.  To what extent can the

21   Court consider a -- a plea agreement -- an executed plea

22   agreement -- which has been set aside, by the way, over the

23   objection of the government -- as reflecting the government's

24   view of the case?  You know, it's sort of like hoisting the

25   government up on its own petard.  I mean, I don't think it's

PROCEEDINGS

1    petard.

2        What happened was, the government viewed the case and

3    views any combination of factors in deciding how to prosecute,

4    whether -- and whether to accept the deal.

5        Among them would be the trauma, or discomfort, or however

6    one wants to say, of a victim having to come to court, having

7    to testify, having to relive a -- a set of circumstances which,

8    from the government's point of view, she was victimized.

9        Okay.  So they say, in this whole collection of factors,

10   that's a pretty significant one.  And they're willing to give

11   up, I would guess, any number of months in terms of the

12   sentence recommendation or -- or negotiated disposition in

13   exchange for not having to go through a trial.  Not necessarily

14   from the point of view of whether they'd have to prove the

15   case, but from the point of view of the cost to -- to the

16   individual of having to prove the case.

17       That's a very, very serious thought, because what happens

18   is -- and I'm -- I'm sort of -- This is the part of your

19   sentencing memorandum that I -- that I just can't agree with,

20   because I think it's not -- it's -- it . . . it's not complete.

21       I can't say, as you would like me to say, you know -- The

22   government thought 110 to 137 months is a perfectly reasonable

23   sentence.  To which I would say, yes, they thought that was an

24   appropriate sentence in light of everything else that they were

25   given in exchange for getting the guilty plea, and I've just

1    identified one thing.

2         Secondly, they -- Your argument then goes on to say, by

3    the way, the case was a -- was a lot weaker than what the

4    government thought, or based its recommendation on.  To which I

5    say, I guess that's true in part but I'm not convinced that

6    that's actually the case.

7         The -- The interesting thing about the case, from the

8    Court's point of view, is that you were facing -- now we're

9    talking about what is the law -- you were facing a situation

10   where there was a distinct likelihood that he would be

11   convicted of an offense with a 15-year minimum.

12        **MS. LINKER:**  (Nodding head.)

13        **THE COURT:**  I'm quite sure -- though I wasn't present

14   at any of the discussions you had with Mr. Bolds -- that that

15   prominently featured in the discussions.

16        And you probably -- though I don't know -- didn't say,

17   "There's no chance at all you're going to be convicted of the

18   coercion, so all we're dealing with here is a 10-year mandatory

19   minimum."

20        My guess is that you said, "There is a possibility that

21   you can get a 15-year mandatory minimum."

22        And, of course, as we know, he didn't.  The jury was

23   unable to -- to reach a verdict on that, and that really means

24   that -- that the government didn't prove to the satisfaction of

25   12 jurors that force, coercion was used and -- and now, as we

1   explore further, he was legally acquitted of -- of that charge.

2       So . . .  So then you go on to say -- So -- So that's

3   basically -- that's argument number one.  Argument number one,

4   I have to tell you, I -- I don't subscribe to.  I think I said

5   why.

6       I know pleas -- Believe me, I know pleas, and a lot of

7   different things go into them.  A lot of different things.  And

8   one can't say, well, they thought the crime and everything

9   about the crime was 110 to 137 months; therefore, that's the

10  position that they're stuck with.

11      Clearly, in the Court's view, your client should have

12  taken the deal.  I mean, that seems to me obvious.  It was a

13  very reasonable offer under the circumstances.  That's the

14  Court's view of it.

15      He has a right not to take the deal.  I mean, I -- we've

16  had all those hearings and so forth.  And so that's -- that --

17  And he exercised that right, and the exercise of any right is

18  then what follows from it.  Any number of things can follow

19  from it.

20      It is clear that what followed from it was the acquittal

21  of the -- of the most serious count, the mandatory minimum

22  15-year sentence, and I'm appreciative of that fact.

23      And that does have a bearing on the sentence that the

24  Court thinks is appropriate under the circumstances.  But I

25  don't know that it means that the government necessarily

PROCEEDINGS

1   thought that 110 and 137 months was just -- just what this case

2   deserved.  I think they said it's what this case deserves if we

3   don't have to go to trial for all the reasons.  That's -- So

4   that's why I'm rejecting your first argument.

5            MS. LINKER:  And -- And I -- And I think that the

6   Court is right to a certain extent.  And I actually agree with

7   the Court when it says, so they could give up any number of

8   months but not 20 additional years.  I --

9            THE COURT:  Well, then --

10           MS. LINKER:  So --

11           THE COURT:  Well, we're arguing a different thing.

12  Let's keep it --

13           MS. LINKER:  So --

14           THE COURT:  I -- Let's keep it clear.

15      What -- To come back and say -- For them to come back and

16  say, "We think a 30-year sentence is appropriate," that's a

17  different issue.  I can deal with that.  I'll be glad to

18  address that.

19      But I don't -- I'm not saying that they thought that,

20  under the facts of this case, 110 to 137 months was the -- was

21  a -- an appropriate sentence.

22           MS. LINKER:  And, Your Honor, I think that the point

23  is to look at all of the factors, which is how the government

24  viewed the case at the time, their willingness to enter the

25  plea.

1    There is a changed dynamic after trial.  But I think when

2  you get as high as 30 years, it's a trial penalty.  It's an

3  unconstitutional trial penalty.  It's a violation of Mr. Bolds'

4  Sixth Amendment right to go to trial to say that it's that

5  dramatically different, and that's the basis of my argument.

6         **THE COURT:**  Well, I have no intention of sentencing

7  anywhere near that range.

8         **MS. VARTAIN:**  And, Your Honor --

9         **THE COURT:**  Yes.

10        **MS. VARTAIN:**  -- if the government can be clear on its

11  position.

12        **THE COURT:**  Yes.

13        **MS. VARTAIN:**  The position is that this defendant and

14  the crime that the jury convicted -- crimes the jury convicted

15  him of were a guidelines range sentence.

16    Your Honor has now said what Your Honor thinks the

17  guidelines calculation is for this criminal history -- history

18  category, and that is what the government thinks is the

19  appropriate sentence here.

20        **THE COURT:**  All right.

21    So we move to the second argument, having been teed off by

22  the -- teed up by the government, which is, is the guideline

23  sentence a reasonable sentence?

24    And, really, there are two arguments that are raised.  The

25  first is, there really is no empirical basis for a sentence of

1    324 months to 405.  There just isn't.  It doesn't exist.  We're

2    totally unaware of it.  You know, what's the basis?  Other than

3    it's there in the book.  Okay.

4        And the second thing is, the government -- the defense

5    comes in and they say, well, he probably would like some

6    explanation for why it's there, because it's not one of those

7    things that comes out of the ether.  And so there is a

8    explanation, and the explanation are the mandatory minimums.

9        And what happens is, the mandatory minimums of 120 months

10   or 180 months, depending on what the circumstances are, then

11   sets all the other specific offense characteristics of it.

12       So it really is a sentence -- a guideline sentence that is

13   based more on the fact that there is a mandatory minimum

14   pushing it than evidence sustaining it.

15       That's -- That's the defense argument, and I don't know of

16   any rebuttal to that argument, because that is the defense

17   argument.

18       Have I got that right?  I think I have.

19           **MS. LINKER:**  (Nodding head.)

20           **THE COURT:**  Okay.  All right.

21       So I turn to the government, having articulated the

22   defense argument, and ask you -- And I'm not trying to put you

23   on the spot.  Really, I'm not, because I -- I'm not.  I'm just

24   not.

25       But are you aware of anything out there that I should look

PROCEEDINGS

1   at that would -- that would -- because I was aware of one

2   thing, and I didn't become aware of -- It sort of crept into

3   the defense memo, which was that the average sentence is 137

4   months for -- Where -- Where is it in your memo?

5           **MS. LINKER:**  Your Honor, I went through --

6           **THE COURT:**  I put a big circle around it.

7       But, I mean, that -- that -- It's not that you alerted me

8   to that.  I would have understood that to be the case.

9       But you're talking about all these other sentences that

10  are --

11          **MS. LINKER:**  Correct.

12          **THE COURT:**  -- given by my colleagues down the hall.

13          **MS. LINKER:**  Correct, Your Honor.  I cited to a couple

14  of cases that I could find for similar conduct, and I cite to

15  the -- cite to those on Page 7 of my memo.

16          **THE COURT:**  Well, I was trying to find the --

17          **MS. LINKER:**  And then --

18          **THE COURT:**  -- 137 months.

19          **MS. LINKER:**  The 137 months, Your Honor, is at Page 10

20  of my memo.  And the --

21          **THE COURT:**  That's right.

22          **MS. LINKER:**  It's hard to figure out exactly for this

23  offense.

24          **THE COURT:**  Okay.  Let me just read it.

25      (Reading):

1              "Statistics from the United States Sentencing

2         Commission reveal that the average sentence in all

3         Federal offenses in fiscal year 2013 was 45 months;

4         the average sentence in sexual assault cases was 137

5         months; the average in child pornography cases was 136

6         months."

7         Okay.  Now, I don't know whether this -- whether this is

8    considered a sexual assault case.

9              MS. LINKER:  Your Honor, if you look at the footnote,

10   it's -- it used to be -- They had a separate category for

11   prostitution offenses.  They then put it under the child

12   pornography offenses.  And I cited to the United States

13   Sentencing Commission's Source Book that defines those two

14   categories.

15        But I thought they were both relevant.  They're both

16   around the same number.  But I do believe that, technically, it

17   falls under child pornography cases now, according to the

18   Sentencing Commission.

19             MS. VARTAIN:  Your Honor --

20             THE COURT:  So --

21             MS. VARTAIN:  -- I don't know whether technically it

22   does or not, but as someone who prosecutes child pornography

23   offenses, I think child pornography offenses to the extent that

24   it includes, as I assume it does, possession of child

25   pornography, is correctly lower.

1      And as Your Honor knows from sentencing those cases, most

2   of those offenders are CHC1 as opposed to a repeat offender

3   like we have before the Court today, which necessarily drives

4   the sentence upwards, as -- as it does in this case.

5          MS. LINKER:  Which is why these averages, and so this

6   is the average.  It takes into account people with high and

7   with low and with different types of offense conduct and people

8   that have the force, fraud or coercion conviction --

9          THE COURT:  Well, it leads to this --

10         MS. LINKER:  -- and that's an average.

11         THE COURT:  It leads to this.  You tell me to ask the

12  government.

13     I don't have any problem with sentences -- Well, when I

14  say I don't have any problem, I'm saying that it appears to me

15  well within the range of reasonableness to sentence a person

16  from 110 months to 200 months, depending on their record, so

17  forth, in connection with this offense.  I don't have a problem

18  with that.

19     But to start to go up from 200 months or 180 months to 324

20  months, I have to have before me something -- in my mind,

21  something that forms a -- a basis for such a very, very long

22  sentence in support of the guideline range.  In other words, I

23  understand that's what the guidelines say, but I'm just trying

24  to figure out, does this make sense at all?

25     And then I think about something else, which I'll tell you

 1   about, because I was a state prosecutor for five years, and I

 2   had many, many pivoting cases, many pivoting cases much more

 3   aggravated than this, and many not as aggravated as this.

 4        And the types of sentences that would be meted out for

 5   pimping -- intrastate pimping -- would be somewhere in the

 6   neighborhood of three to six to seven years, and that's what's

 7   present -- is my understanding presently.  Had he been

 8   prosecuted in the State system, it would have been perhaps a

 9   sentence of seven years, or around there -- maybe eight, maybe

10   six, I don't know -- to which we add here another factor, which

11   is, first of all, the Federal factor, which gives jurisdiction

12   to it -- that is, the transportation over state lines -- and

13   that, of course, brings him into this court where the sentences

14   are clearly more severe than they are in the State Court

15   system.

16        I'm not criticizing the State Court system, but I'm trying

17   to get a picture of what is an appropriate sentence for pimping

18   a minor in which the minor crossed state lines.

19        And it seems to me that I -- you can make the argument

20   for, you know, seven years, 10 years, 12 years, 15 years.  But

21   when you start talking about 30 years -- and I don't -- I'm not

22   saying you're talking about it absent the Sentencing

23   Guidelines.  But when -- But that's the final thing.  I mean, I

24   have -- I can't say I'm sentencing you to the Sentencing

25   Guidelines.  I'm sentencing you to a sentence.

1    And it just seems to me that that is . . . an unreasonable

2    sentence and a sentence that is not justified in terms of

3    imposing a sentence that is no more severe than that which is

4    necessary to address the conduct of the defendant.

5    I'm quite sure you couldn't tell me -- and I'm not asking

6    you to -- well, what's the difference between 28 years and 30

7    years or 25 years and 30 years or 32 years, because nobody

8    can -- can articulate that, other than to say something that

9    I'm actually sympathetic towards, which is, given the history

10   of Mr. Bolds, given his record, given what he has done from an

11   early age and persisted in to the age of 35 --

12   Is he 35?

13           MS. LINKER:  He turns 36 late this month.

14           THE COURT:  Yeah.

15   -- that there is no indication that he will do anything

16   other than cause harm to people on the outside.  There is not

17   the slightest indication.

18   Therefore, society has to be protected.  That's really

19   what we're talking about.  We're not talking about any

20   rehabilitation.  We're not talking about any . . . action

21   that's going to change his conduct.  And I guess that's

22   rehabilitation.  We're not talking about any of that.  We're

23   talking about protecting people in the future.  And, therefore,

24   each year he's in custody is a year that society is protected

25   from his behavior.

1      That, I don't disagree with.  I mean, you're -- you're

2  right there, if that's -- if that's in large part your

3  argument, because -- And you have a duty to do so.

4      And I -- I would tell you his record evidences that,

5  supports it, completely, save and except for two things:

6      Number one, which doesn't really detract from it, is -- is

7  his really horrendous childhood in which is well documented;

8  and then the fact that he actually did protect members of his

9  family, his sister and brother, or two sisters --

10      **MS. LINKER:**  Two sisters.

11      **THE COURT:**  -- two sisters, one of whom became a

12  Police Officer.

13      And, therefore, at some age, he was capable of

14  understanding a sense of -- having a sense of responsibility

15  and -- and protecting people who were vulnerable.

16      But that has been given up by Mr. Bolds.  He has abandoned

17  that -- that -- those concerns, those thoughts.  He just has

18  set that aside and embarked upon a long, long record of -- of

19  endangering the vulnerable people, the prostitutes, on the --

20  on the street, otherwise.  Just turned the other direction.

21      And I will tell you -- I -- I don't know.  You know, one

22  always hopes that people will -- will change.  I don't see any

23  evidence of that here.

24      So, I guess, other than that type of argument, I don't

25  know of any other argument in support of lengthy sentences,

1    unless you can think of one.

2         MS. VARTAIN:  No, Your Honor.  I think that is a -- is

3    a strong argument in favor of them.  And -- And then, as I've

4    said repeatedly, that the base offense level for this is 30,

5    which reflects appropriately, the government thinks, the weight

6    of the offense.  And if Your Honor disagrees, I -- that's fine.

7    But I think sex trafficking is a serious crime.  The Court

8    heard the facts and saw -- heard from the victim here.  It was

9    a serious crime in this case as well.

10        And so, based on that, the government's not aware of any

11   factors that would make us recommend a lower-than-guideline

12   sentence.

13        THE COURT:  Well, that's the government's position.

14        Go ahead, Miss Linker.

15        MS. LINKER:  Your Honor, just to echo a couple of

16   points.

17        The -- I cited to some legislative history in my

18   memorandum as well of the targeted conduct that this statute is

19   actually addressing.

20        And I think the Court is corrected that this is like a

21   pimping case.  And I have a *San Francisco Chronicle* article of

22   "Woman to busted pimp:  'Game over.  I win.'"  And this is one

23   of the horendous State pimping cases, and the defendant in that

24   action received a six-year sentence.

25        So I think the Court is accurate in its assessment of what

1   would generally happen in State Court.  And what we have here

2   is a 10-year mandatory minimum.

3       But I think that it's important to remember that he was

4   not convicted of the 15-year mandatory minimum.  And so I think

5   the Court should give weight to the fact that that was not

6   acknowledged and to not sentence higher than 15 years because

7   he was not convicted of that count and of that conduct.

8       I also think it's -- The Court's point about Mr. Bolds'

9   criminal history, it is what it is.  There's nothing I can do

10  to change that.

11      I provided the Court with letters from the family that I

12  think really do inform how --

13          THE COURT:  I read the letters that were --

14          MS. LINKER:  I appreciate that, Your Honor.

15      And -- And I'd like to point out to the Court that

16  Mr. Bolds' grandfather is here in the courtroom today in

17  support of his grandson, and Mr. Bolds is incredibly

18  appreciative of that.  And his grandfather's hope is that

19  Mr. Bolds can get out at a time when -- when he's still alive.

20      And I think that what -- The Court has seen more than any

21  of us.  I have to acknowledge the Court has been around longer

22  than we have and has seen more than we have.

23      But there is a point when someone somewhat ages out of

24  criminal conduct.  And I think that a 10-year sentence,

25  Mr. Bolds is going to be 10 years older.  He is not going to be

1    able to be up to his same ways.  He is going to have to turn

2    his life around.  And he's going to have something that he's

3    never had before, which is a term of Federal supervised

4    release.  And Your Honor is well aware that our Probation

5    Officer will bring him in on a moment's notice if he reverts

6    back to his old ways.

7         The final thing -- And I mentioned this in my paper but I

8    just want to note for the Court -- It's not the final thing.

9    It's the -- getting close, though --

10             **THE COURT:**  The --

11             **MS. LINKER:**  -- is that the parole violation.

12   Mr. Bolds did do six months on that.  He will not be given

13   credit, even though it was the same offense conduct, unless the

14   Court were to reduce his sentence by that period of time.  And

15   so I hope that the Court will take that into consideration in

16   determining what the fair and reasonable sentence is.

17        And the last thing I want to just focus on is -- is what

18   the Court just talked about with respect to Mr. Bolds' sisters

19   and -- and that letter from Mr. Bolds' sister, which was

20   remarkable and moving, and as was the letter from his father.

21        And I think that the unfortunate reality is that Mr. Bolds

22   learned from a very young age what he needed to get by and to

23   support his family was to hustle.  And there's no other way to

24   put it.  And that was the only model that he learned.  And I

25   think a 10-year term in custody is going to change that.  It's

PROCEEDINGS

1  going to force him to change.

2      And he is, of course, responsible for his actions, and a

3  10-year sentence is an incredibly long sentence.

4      I think what's significant and why I told the Court what

5  the average sentence was for all Federal offenses -- And we

6  have really high sentences in Federal Court.  The average

7  sentence is still 45 months.  So 120-month sentence is three

8  times that, close to three times that, and is a significant

9  hit.  And at what point is it diminishing returns?

10      And so I really do think that 120-month sentence for all

11  of those reasons is sufficient in this case.

12          **THE COURT:**  Okay.  Mr. Bolds, do you want to address

13  the Court?

14          **MS. LINKER:**  Can I have one quick moment with him --

15          **THE COURT:**  Sure.

16          **MS. LINKER:**  -- please, Your Honor?

17                  (Pause in proceedings.)

18          **MS. LINKER:**  He would like to say something, Your

19  Honor.

20                  (Pause in proceedings.)

21          **THE DEFENDANT:**  (Shaking head.)

22          **THE COURT:**  You want to take a moment to . . .

23                  (Pause in proceedings.)

24          **THE DEFENDANT:**  I just want to say I'm willing to

25  change.

1    **THE COURT:**  Well, I appreciate that.  I -- I hope that

2    you do.  I'm . . .

3        I'm going to give you a lengthy sentence, but not as long

4    as -- as some people might think is appropriate.  You will get

5    out.  You will have a life ahead of you.  And it is my hope

6    that you do change.  I don't know whether . . . the length of

7    the sentence will necessarily bring about the change.  I think,

8    actually, you could change with a much shorter sentence.

9        But I simply have to protect society.  That's, in large

10   part, what is motivating the government here, and I don't think

11   inappropriately.

12       I think that perhaps you could use the time to develop

13   some vocational skills that will get you through your life.  I

14   think, you know, it's fortunate that you are 36, and when you

15   get out, you'll be at an age where you can work and still have

16   a life and an important part of your life.

17       But this is a serious crime.  Your conduct was very

18   serious.  You certainly took advantage of a young girl who is

19   addicted to methamphetamine.  I think it was pretty clear that

20   she did have this drug problem.

21       I know if you go up to Reno now, you just see so many

22   people, so many children, who have serious drug problems and no

23   good way out of it, from their point of view.

24       And -- And the statute, and the -- is designed, and the

25   government's position is designed, to try to make that crime so

1    serious that it will deter individuals from committing.  That's

2    their goal.

3         It's -- It's -- You know, it is that they are charged with

4    the responsibility of trying to cut down on this type of

5    offense, you know.  They're not out there trying to necessarily

6    eliminate prostitution.  That's much more of a State issue than

7    it is a Federal issue.

8         But they do want to -- to try to take advantage to -- to

9    try to use the law to make sure that people don't take

10   advantage of young children who are aimless, who are -- leave

11   their household -- in this case, for perhaps perfectly valid

12   reasons why she didn't remain in her household -- but they're

13   very, very vulnerable.  And so that's the purpose of the

14   sentence in this case.

15        I am mindful and have used as a -- as one of the factors

16   in sentencing that you were not convicted of the 15-year

17   sentence and, therefore, I intend to give you a sentence less

18   than the 15 years.

19        Because of my own sense of justice, it's an odd interplay

20   of -- of mandatory minimums, going to trial, and then imposing

21   a sentence that is greater than that which you were successful

22   in trial not having gotten the conviction.  You know, I know

23   legally I can do otherwise, but that's just my own sense of --

24   of justice.

25        Therefore, pursuant to the Sentencing Reform Act of 1984,

1    it is the judgment of the Court that Robert Bolds is hereby

2    committed to the custody of the Bureau of Prisons to be

3    imprisoned for a term of 160 months.  This term consists of

4    terms of 160 months, all counts to be served concurrently.

5        The Court recommends the defendant participate in the

6    Bureau of Prisons Residential Drug Abuse Treatment Program.

7        Upon release from imprisonment, the defendant shall be

8    placed on supervised release for a term of 10 years.  This term

9    consists of terms of 10 years on each of Counts One and Two,

10   all such terms to run concurrently.

11       Within 72 hours of release from the custody of the Bureau

12   of Prisons, the defendant shall report in person to the

13   Probation Office in the district to which the defendant is

14   released unless the defendant -- the defendant's a citizen of

15   the United States.  He's not going to be deported.

16       While on supervised release, the defendant:  Shall not

17   commit another Federal, State or local crime; shall comply with

18   the standard conditions that have been adopted by this court;

19   shall reframe from any unlawful use of controlled substance;

20   submit to a drug test within 15 days of release on supervised

21   release; two periodic drug tests thereafter; and shall comply

22   with the following conditions:

23       The defendant shall:

24       Participate in a program of testing and treatment for drug

25   abuse as directed by the Probation Officer until such time as

PROCEEDINGS

1    the defendant is released from treatment by the Probation

2    Officer.  Defendant is to pay part or all of the costs of this

3    treatment in an amount not to exceed the cost of treatment as

4    deemed appropriate by the Probation Officer.  Payment shall

5    never exceed the total cost of your analysis and counseling.

6    The actual co-payment schedule shall shall determined by the

7    Probation Officer.

8         Defendant shall abstain from the use of all alcoholic

9    beverages.

10              MS. LINKER:  Excuse me, Your Honor?

11              THE COURT:  Yes.

12              MS. LINKER:  I apologize for interrupting the Court.

13              THE COURT:  No, go ahead.

14              MS. LINKER:  I don't think that the conditions

15   recommended as Number 3, 5, 6, 7, all the sex offender

16   conditions and sex offender treatment conditions --

17              THE COURT:  I'm not going to impose Number 3.  Let me

18   look at Number 4.

19                     (Pause in proceedings.)

20              THE COURT:  I do want -- Number 4, I'm imposing.

21              MS. LINKER:  Okay.

22              THE COURT:  Now, your --

23              MS. LINKER:  The next is Number 5, Number 6.

24              THE COURT:  Five, I'm not imposing.

25              MS. LINKER:  Number --

1        **THE COURT:**  Six, I'm not imposing.

2        **MS. LINKER:**  Number 7.

3        **THE COURT:**  Well, I'm imposing seven if, in fact, the

4    State law requires it.

5        **MS. LINKER:**  Only so much as the State law requires

6    it, then.

7        **THE COURT:**  All right.  Okay.  So let me just re --

8    The next one:

9        Number two, defendant shall abstain from the use of all

10   alcoholic beverages.

11       Number 4, the defendant's residence shall be approved by

12   the Probation Officer and any change in residence must be

13   preapproved by the Probation Officer.  Defendant shall submit

14   the address of any proposed residence to the Probation Officer

15   at least 10 days prior to any scheduled change.

16       I'm not doing Number 5.

17       Number 6, I'm not doing.

18       Number 7, the defendant shall register with the State Sex

19   Offender Registration Agency as required by State law.  The

20   defendant shall provide proof of registration to the Probation

21   Officer within three days of release from imprisonment or

22   placed on supervision in any state that has adopted the

23   requirements of sex offender registration notification at 42

24   U.S. Code Section 16901.

25       Defendant shall also comply with all such requirements as

1   directed by the Probation Officer, the Bureau of Prisons or any

2   State Sex Offender Register -- Registration Agency in which he

3   resides, is a student or was a convicted -- or was convicted of

4   a qualifying offense.

5       Number 8, defendant shall pay any special assessment that

6   is imposed by this judgment that remains unpaid at the

7   commencement of supervised release.

8       Number 9 --

9       **MS. LINKER:**  The first sentence I'm okay with, but the

10  second sentence, I object to.

11      **THE COURT:**  The defendant shall have no contact with

12  the victim unless otherwise directed by the Probation Officer,

13  period.

14      Number 10, the defendant shall submit his person,

15  residence, office, vehicle or any property under his control to

16  such a search -- to a search.  Such a search shall be conducted

17  by a U.S. Probation Officer at a reasonable time, in a

18  reasonable manner, based upon a reasonable suspicion of

19  contraband or evidence of violation of a condition of release.

20  Failure to submit to such a search may be grounds for

21  revocation.  Defendant shall warn any residents that the

22  premises may be subject to searches.

23      Defendant shall cooperate in the collection of DNA as

24  directed by the Probation Officer.

25      Defendant shall not own or possess any firearms,

PROCEEDINGS

1   ammunition, destructive devices or other dangerous weapons.

2       Further ordered:  The defendant shall pay the United

3   States a special assessment of $200, which shall be due

4   immediately.

5       When incarcerated, payment of criminal monetary penalties

6   are due during imprisonment at the rate of not less than $25

7   per quarter.  Payment shall be paid to the Bureau of Prisons

8   Inmate Financial Responsibility Program.  Criminal monetary

9   payments shall be made to the Clerk U.S. District Court, 450

10  Golden Gate Avenue, Box 36060, San Francisco, California 94102.

11      The Court finds the defendant does not have the ability to

12  pay and orders the fine be waived.

13      Also, I want to advise you, Mr. Bolds, that you have the

14  right to appeal your jury conviction, any of the decisions by

15  this court, including the sentencing.

16      And you are to file a Notice of Appeal within 10 days of

17  the entry of judgment of conviction.

18      The Court will appoint a lawyer.  I don't know how that

19  works but it's -- I think it's either the -- the -- comes from

20  the CJA -- I mean, either from the Public Defender's Office or

21  the Ninth Circuit does it, because I never appoint people for

22  appeals.

23          MS. LINKER:  We -- We stay on the case, Your Honor --

24          THE COURT:  All right.

25          MS. LINKER:  -- unless there's something --

PROCEEDINGS

1           THE COURT:  Well, whatever --

2           MS. LINKER:  -- some problem happens.

3           THE COURT:  -- whatever usually happens.

4      And you will file a Notice of Appeal.

5      I think that concludes it.  Is there anything else?

6           MS. LINKER:  No.  Thank you, Your Honor.

7           THE COURT:  Okay.  Thank you.

8           MS. VARTAIN:  Thank you, Your Honor.

9      H(*) H(*) H(*) H(*)

10               (Court adjourned at 3:35 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATE OF REPORTER

I, CANDACE YOUNT, Contract Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in 11-0697 CRB, United States of America vs. Roderick Harold Bolds, were reported by me, a Certified Shorthand Reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

Candace Yount, CSR No. 2737, RMR, CCRR
Contract Court Reporter - United States District Court

Monday, September 22, 2014